Okay, welcome. This is our second case this morning. It is number 19-1206. Juan Carlos Alfaro-Garcia versus the U.S. Attorney General. Mr. Bogdani for the petitioner and Mr. Spurlock for the Attorney General. Mr. Bogdani, whenever you're ready. Thank you, Your Honor. Brian Bogdani for the petitioner and Mr. Garcia. Mr. Garcia is asking that this panel reopen his deportation proceedings and the most important things to keep in mind in this case are the principles of due process and fairness. Fundamentally, the BIA's decision presupposes that Mr. Garcia was a literate man of average intelligence. If those things are assumed, then the BIA's holding that Mr. Garcia waited too long to challenge the validity of his removal order makes perfect sense. However, if you view the procedural history in this case with the understanding that Mr. Garcia is illiterate, even in his own language, and that he is mentally challenged, it is clear that Mr. Garcia was railroaded by legal process that he had no ability to contend with. Counsel, may I ask you a question? My understanding when I read the motion to reopen is your client never alleged in that motion to reopen that he was illiterate. That's correct, Your Honor, and that motion to reopen initially was filed by separate counsel. Now, that issue came much further to the forefront. And didn't in fact that motion say he was coerced as opposed to him being illiterate? Indeed it did, Your Honor. However, it's not an either or situation. Yes, there was coercion in the sense that the CBP officials that placed that stipulation for removal before him did so in a manner in which he had no counsel to advise him. He had no understanding or ability to read what was on that stipulation effectively. He was in a situation where he's got law enforcement officials telling him sign, sign, sign so you can go home. He's got no ability to know what he's signing or even if he did have the ability to read it. In any event, his IQ, he has severe mental issues, Your Honor. His IQ has been scored by two separate psychologists as below a level of 50. So when we take that... On a different matter, you've got cases from the 5th, 7th, and 9th circuits holding that someone in Mr. Alfaro Garcia's situation is not permitted to file a motion to reopen. What do you say about those cases? Okay, so the cases that state that Mr. Garcia is permitted to reopen his case is effectively all linked to Section 1231A5 of the immigration statutes. And that section operates to bar any review for any alien that's been ordered deported and has since re-entered the United States without any permission. Okay, now what makes Mr. Garcia's case different from all of those other cases is that at the time of his motion to reopen and at the time of his appeal to the BIA, the Department of Homeland Security had not in fact fully reinstated his order of removal. His order of removal was regulatorily prevented from being reinstated until Mr. Garcia was given the benefit of what's called the reasonable fear screening or the reasonable fear review. And that's a procedure whereby the government assesses whether the alien has any reasonable fear to return to his home country due to persecution for an immutable characteristic of his own. Now when Mr. Garcia was arrested in 2018 by the DHS, he was very quickly processed and then tendered over to the United States Marshals for prosecution for just that very issue, illegal re-entry. They did not complete the reasonable fear procedure in his case and because they did not complete the reasonable fear procedure in his case, the DHS, though they did file a notice of intent to reinstate Mr. Garcia's removal order, and that's exactly what it was, a notice of intent to reinstate the order, it was not in fact reinstated until he had completed that reasonable fear process. When did that occur? Yes, your honor, and that occurred and the government actually specifically cites that date in its August 6th filing and that date was May the 4th of 2020. And it states that thereafter on June the 19th, Mr. Garcia was ordered removed. Now the reason that it's June the 19th is because Mr. Garcia had a 30-day appeal period from that May 4th hearing. So that is the specific fact pattern that distinguishes Mr. Garcia's case from those other cases. When did he file, when did Mr. Alfaro Garcia file his motion to reopen? His motion to reopen would have been filed, and I apologize, but it would have been at the, I believe it was June of 2018, and I'm fairly confident that's the correct date. So just to be clear, you're, I'm just, you're saying that the timing of the reinstatement, that the timing is what gets him out from under this statute? That's correct, your honor, because Mr. Garcia had an outstanding reasonable fear procedure that had not concluded, the DHS was legally barred by its own regulations from reinstating his removal order until he had fully completed that process. So any argument that there was some sort of jurisdictional preemption for Mr. Garcia to file a motion to reopen or subsequently to... Can you tell me where exactly and what, what provision does it say that, that they're prohibited from reinstating the prior order of removal? Because I don't see that in the language of 1231. Right, your honor, and now, now it's not, it's not expressly stated, and that's correct, in 1231-A-5 there is no clear language that there's a jurisdictional preemption. Well, because the language of that statute is pretty clear that it says, if an alien has re-entered the United States illegally after having been removed or having departed voluntarily, and we can agree that that actually is what occurred here, he, he was removed either under duress, I guess you're alleging, or departed voluntarily, and then he re-entered the country without permission. The prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed. So that language is very explicit. It doesn't give any allowances. So I guess my question is, why would that be preempted? Why is that language not necessarily, what does it have to do with anything else being filed? Right, so, and actually, Mr. Garcia, and we went further deep into that specific point in his appeal to the BIA, and in that appeal to the BIA, we do discuss the regulations that state quite clearly that regardless of any, of any bar for re-entry, no alien can be pursuant to international law in our treaties against sending people back to countries where they could be tortured or killed. No alien can be re-removed, even by reinstatement, unless and until the government has determined that that is not a reasonable possibility. Right, but that, but again, I mean, the cases that Judge Jordan referred to from the 5th, the 7th, and the 9th, they all address the fact that this provision, 1231, does not preclude an alien who has entered the country illegally after being deported, still has other avenues, but reopening the removal process under the statute is in essence a penalty or a waiver, or it's, it's a, the alien has forfeited the right to proceed under removal proceeding anymore, to reopen their removal based on the fact that they entered the country illegally, and that's what the statute calls for. You obviously have the right to go under any other and travel under any other statutes, and there are other avenues. Well, as a matter of fact, Your Honor, it, because the way Mr. Garcia was deported, he was deported by stipulation, and in that stipulation, it, it delineates that your right to appeal is waived. Now, if that stipulation is actually valid, then that's a valid waiver. So, in essence, there really is no other avenue for Mr. Garcia to proceed under, except to go back to the original order. Counsel, that's not true, and you know that's not true. There are other avenues. You can do other, you can claim that you have a right to, to seek asylum because you're going to be persecuted. There are other avenues. So, the question here, in my understanding, and correct me if I'm wrong, but are we not here, the question is whether or not your client can reopen the removal, the removal. That's my, my understanding of what the issue is before this court right now. That is correct, Your Honor, and, and there are regulations that specifically state, and we do cite them in our brief, and it's not, it's not our intent to sort of color this as a one shot or nothing. You know, this, the right of asylum is not, in and of itself, an avenue to reopen. It's actually an independent basis for relief, but in essence, whether or not the motion to reopen was jurisdictionally preempted, yes, is, is the primary issue before this court, and for the reasons that we cite in our brief, we do not believe it operates in that fashion. Mr. Bogdani, do you have at hand the regulation that you alluded to that says that you can't reinstate a prior order of removal until you go through the reasonable fear determination? Your Honor, that, that specific regulation was discussed, but not, but not specifically at hand at this moment. I don't, but it is, it is stated in Mr. Garcia's appeal to the BIA, and there is an argument there that states that he could not be deprived of his right to have a reasonable fear review prior to reinstatement, and in fact, the BIA does address that argument made by Mr. Garcia on page three of its opinion, and in that, on page three of the opinion, when addressing that issue, the board did acknowledge that Mr. Garcia, yes, does have the right to complete that, that, that reasonable fear procedure, and that he should indeed ask to do so. You don't, reading your brief, I don't see that argument raised that you could not reinstate until the reasonable fear determination was completed. No, Your Honor, but more, more generally and broadly, our argument is directed towards whether or not the BIA gave any credence to the underlying dispute to the removal order, and our argument is that the BIA did not really give any serious consideration for Mr. Garcia's claims, and that all kind of undergirds that prior argument to the appellate court or to the board, uh, that he had valid reasons to seek a motion to reopen that were not jurisdictionally preempted by section 1231A5. All right, thank you very much. You've saved your time for rebuttal. Thank you, Your Honor. Okay, Mr. Spurlock. Good morning. May it please the court, Mathis Spurlock on behalf of the United States. I'd like to just start out by saying the plain language of 1231A5 clearly precludes the petitioner's reopening, or motion to reopen in this case, and the board's decision denying reopening should be in the plain language of 1231A5, and the court doesn't need to reach any of the other issues raised by a petitioner in terms of the underlying circumstances surrounding his original removal order. Mr. Spurlock, is there a regulation that the government has enacted dealing with when you can reinstate an initial removal order when the alien has made a, uh, an allegation of fear? If I could address that, Your Honor, the petitioner is complaining the issue of the reasonable fear process and the reinstatement by DHS in this case. There, there's, and that, is why the government 28J, submitted a 28J letter, uh, for the Ninth Circuit, uh, Cuenca case, because that case is directly on point with the argument that the petitioner is now raising, which was not raised in the opening brief, which is that the timing of his reinstatement allowed him to file a motion to reopen and wasn't barred by 1231A5, and that's simply not the case, and in Cuenca's, uh, directly on point, as soon as, as soon as petitioner was removed on that previous removal order, as soon as he illegally reentered the United States, and as soon as he was served with the, the notice of intent to reinstate that, that prior order, he's precluded from filing a motion to reopen. The language of 1231A5 is clear, and although it's, uh, the Ninth Circuit direct, addresses that point directly, um, there's, there's no issue of whether or not the petitioner's reasonable fear proceedings were ongoing. That's not, that's absolutely, uh, no matter whatsoever. Um, in fact... You may, you may, Mr. Spurlock, you may be right, but I'm trying to get a handle on this whole scheme, and so my question to you is not whether you win or lose on that point, but simply whether or not there's a regulation that tells the service that it has to finish out a credible fear determination before it reinstates the order of removal. Is that a regulation, or is there not? There, I don't have the specific regulation at hand, Your Honor, but I can tell you that, yes, the, the petitioner in this case has the, once they reinstate the, uh, the old order of removal, the petitioner absolutely has the opportunity to express a reasonable fear to, uh, to DHS, and if the petitioner expresses such a fear, they can be put into withholding only proceedings, and that process can occur prior to re, prior to removing, uh, the, the petitioner, but that has no impact whatsoever on 1231A5. Let me ask you a question, because Cuenca, I think, sort of addresses that point, not maybe directly, but in that, in that case, it seemed that the Ninth that what Cuenca could not do was, um, it was not allowed to reopen the removal order because they entered the country illegally after having been removed, but it did allow collateral attack of the underlying, uh, removal order if you could show, you know, gross miscarriage or if you could show other things. I mean, there are other avenues. I think that's what the Ninth, uh, Circuit was proposing that prohibits the reinstatement of a removal order when, uh, there is any other avenues of collateral attack by the petitioner. Not that I'm aware of, Your Honor. I think, I think the other point that, that should be made is, and this was also made by the board and their decision, is that he was provided the, the initial reasonable fear interview and did indicate a, a, a fear of returning to Mexico, but then he refused to provide a sworn statement that's required to essentially establish that there was a reasonable fear and thus make a determination on reasonable fear, uh, which would give them the opportunity for withholding only proceedings, which would have given him the opportunity to go before an immigration judge if the asylum officer found that there was no reasonable fear. But that process didn't occur prior to following the motion to reopen because there was, there was, there was nothing to litigate at that point because he hasn't, he hadn't raised a reasonable fear. And that's exactly what the board said, was that he hasn't done that. And he hasn't pursued that. If he, if there's no temporal problem with him raising the reasonable fear later, and that's apparently what happened in this case after the motion to reopen was filed, he raised the reasonable fear, but the timing of the two has nothing to do with each other. If he, he can establish, he can establish a reasonable fear and still not be able to file a motion to reopen to, to, to re-litigate his, his prior order of removal. And that's essentially what he's trying to do is re-litigate that 2008 order of removal by sort of bootstrapping on his reasonable fear proceedings. But that's, there's nothing that fear, uh, from litigating the reasonable fear where he's prohibited from under the statute is from reopening the removal order because he has forfeited that right under the statute by, by, uh, illegally re-entry. That's absolutely correct, Your Honor. 12, 1235A, 1231A5 says absolutely nothing about, there's, there's an exception for this while the reasonable fear process is running. Absolutely nothing about that whatsoever. This specifically deals with the reopening of the prior order of removal and has nothing to do with, uh, the, the timing of his reinstatement proceedings. If one can argue, if, if he was able to do that, uh, as long as he kept the possibility of a reinstatement, uh, uh, you know, I'm sorry, a reasonable fear, uh, proceeding occurring, he could just endlessly, uh, avoid the, the bar of 1231A5. And that's clearly not what Congress intended, uh, was to allow someone just to say, well, you haven't completed my reasonable fear, uh, uh, argument. So I'm just going to be, I'm able to file motions to reopen attacking my prior order of removal. And that's simply not. And this particular statute, which, I mean, it does seem draconian, but Congress made it draconian when they, when they amended the statute. That was their intent. That's correct. The purpose of the clear purpose of the statute is finality, finality of these, these removal orders that are executed. And the, the, the one issue that makes, that makes this statute different than most statutes is you have to illegally unlawfully reenter the United States in order for it to, uh, to kick in. That's, that's the distinguishing factor here. And that's specifically, I think what Congress was attempting to remedy. Can I ask you a question, Mr. Spurlock? Um, and I, this question does not deal with the facts of this case, but again, I'm trying to get a handle on this entire scheme. What happens in a situation where someone like Mr. Alfaro Garcia files a motion to reopen, but DHS never reinstates the initial order of removal? Uh, well, if he filed the motion to reopen and they do not reinstate, then 1231A5 does not kick in. Then doesn't the reinstate, then doesn't the date of reinstatement matter? Well, I think, I don't think it matters in the sense that the timing of it matters, where what he's arguing is up until my, up until my reinstatement proceedings were completed, I was perfectly within my right to file motions to reopen. As soon as that, as soon as he, his reinstatement proceedings are over, I'm sorry, as soon as the reinstatement occurs, which occurred in this case before he filed the motion to reopen, he wasn't allowed to file the motion to reopen. He says, but he says, hold on, hold on. He says, he says that the order of reinstatement did not occur until after he filed his motion to reopen. That, that's incorrect. First of all, he filed his, the reinstatement occurred, I believe in April, 2018. He didn't file his, he didn't file his motion to reopen until I believe August of 2018. I could be. Where, where in the record, where in the record can I find that April, 2018 order of reinstatement? Just one moment, your honor. One moment, your honor. DHS reinstated the prior order of removal on April 13th, 2018. That's that administrative record, page number 161. 161. Okay. Thank you very much. Can I ask you a question about that? Yes, your honor. So when, so the statute is sort of an oddly worded statute because it just says that the prior order of removal is reinstated. It doesn't say who's going to reinstatement or what the process would be. And so as a matter of sort of process, just like Judge Jordan was talking about to kind of explain to us how all this works, what goes into the reinstatement of a prior order? Primarily as the petitioner or the alien has provided notice of the intent to reinstate, and they're also provided that opportunity to, to express a reasonable fear of returning to the country that they were removed to previously. In case there was some sort of torture concerns or withholding of removal concerns, they're given the opportunity to do that. That's, that's the primary, that's the primary, I suppose what you'd say that the point at which reinstatement occurs is they're given notice that this is occurring. So that's just an administrative- That answers your question. Basically just an officer, an immigration officer or somebody just gives them notice, look, we've got a prior order of removal, we're reinstating that prior order of removal, and then that sets off some kind of potential proceeding that they could then raise this reasonable fear within that proceeding. Is that what happens? Or is all this, I guess my question is, is all this done by sort of, is it all very informal or is it very formal? Does it, where's the opportunity to talk to somebody who would be like an immigration judge or someone like that? Does that arise in this process? Is it instantaneous? Does it take a long time? Where's my question? Your Honor, if they express a reasonable fear and the asylum officer determines that they don't have a reasonable fear for whatever reason, they get that reasonable fear finding reviewed by an immigration judge. They can refer it to withholding only proceedings in which an immigration judge is specifically doesn't consider the prior order of removal, their consideration of the case is limited to the withholding of removal only, the fear of returning. That's the only thing they're permitted to consider. And in fact, petitioners can appeal that negative immigration judge's determination that there's no withholding of removal or the CAP determination that there's no convention of torture fear as well. That can be appealed. So they have that separate ability to do that, but that has absolutely nothing to do with their ability to file a motion to reopen to challenge the underlying removal order. Those are, that's a completely separate thing. The BIA interpreted what the petitioner was doing here as a collateral attack on the previous removal order. Was that correct for it to do that? I mean, was that sort of giving the benefit of the doubt to the petitioner? How do you, what do you say about the correctness of his ruling on that? Your Honor, are you referring to the, the immigration judge, I'm sorry, the board initially says that the immigration judge was correct not to reopen the case based on 1231A5. And I believe what you're asking is that the board sort of looked also at the circumstances surrounding the, the old removal order. Is that, I understand your question. Is that correct? Yes. I think, I think you're, I think you're right, judge. I think that what the board was doing was the board was in an abundance of caution because some jurisdictions are more willing to look into those facts and they apply the sort of the standard that this court has not and I think that's what the board was doing was in case this is looked at as a gross miscarriage of justice type case, which, which is, there's a very good description of that doctrine in the Cordova Soto case, the seventh circuit case in my, in my brief, where they said that there are a few circuits that, that use that gross miscarriage of justice standard, but no courts have ever overturned a, a old order of removal based on applying the gross miscarriage of justice standard. So yeah, I think that's what the board was doing. There's no reason to go into that, to that point of saying this was a gross miscarriage, this wasn't a gross miscarriage of justice, but I believe that the board was doing that in an abundance of caution. I don't believe the court needs to go. I'm sorry, your honor. No, no, go ahead and go ahead and wrap up. Yeah, absolutely, your honor. I just, the court can decide this case strictly based on section 1231A5 because it's got very clear language and it applies directly to the situation and a petitioner is trying to attack that 2008 order of removal and the court should deny the petition for review on that basis. Thank you. All right. Thank you very much. Mr. Bogdani, you've got your five minutes remaining. Mr. Bogdani, you're on mute. I apologize. Just a couple of points. 1231A5's rule to effectively remove this sort of legal right to anybody that re-enters without permission, it only makes sense in one context and that's if the original order of removal was valid. I don't believe that Congress or anybody would argue that Congress intended 1231A5 to operate as a cure to even the most egregiously invalid deportation orders and that is the argument that we're making and that is the circumstance that Mr. Garcia does allege was present in his case. Being unable to read, being unable to read the stipulation that he signed, having no counsel, no immigration judge, impartial tribunal to explain to him what he was doing at the time and no representation and the regulations governing stipulations for removal are very clear that when an immigrant is not represented, an immigration judge must make a determination that that stipulation is signed in a knowing, intelligent, voluntary manner and although the immigration judge's order does play lip service to that regulation, there is no evidence in the record at all that that determination was made based upon any observation of the immigration judge of Mr. Garcia. There was never a hearing and most certainly he didn't have the benefit of even hearing that he had the right to defend himself, much less that he was statutorily eligible to raise a defense to removal. So there that is a distinction there and... Counsel may I ask you a question? In Cuenca, Mr. the petitioner in that case, Cuenca was not represented by counsel. Is it your position that petitioners have to have counsel or is it sufficient just to have an immigration judge? No, your honor. It's not our position that he must have counsel in order to be valid, but what we are saying is that if there is no attorney, then the immigration judge by its own regulations has to make a determination that that stipulation was signed in a knowing and voluntary manner and there is no evidence of that here. In fact, there was never a hearing. There was never an opportunity for the judge to make that independent determination as he's on to one final point that the government just raised. The government did just say that as a portion of that reinstatement procedure, the government does have to make a reasonable field inquiry and in Mr. Garcia's case, that procedure was cut short because again, he was transferred to the U.S. Marshal Service to be prosecuted and they did so before they had fully completed that circuit case. Kim Covey Barr filed on August 6 for the government. It states very clearly that section 1231.85 is a multi reinstatement under 1231.85 is a quote multi-step process for reinstatement and it operates when it's completed by the immigration officer. It wasn't completed. He was sent off. There were other proceedings that were pending. It cut short and in essence, that multi-step process did not finish and so therefore, it's still open and that's our contention on rebuttal. Let me ask you a quick question. So I think Judge Jordan said the 7th, the 5th and the 9th had ruled against petitioners in your position. Do you have any case law support for the arguments that you're making about the timing difference? The timing difference, those cases are all on point except insofar as they do not address respondents that did not have a completion of that process. So in Mr. Garcia's case, we do allege that his case is distinguishable from those other cases because he was cut short smack in the middle of that reinstatement process that he sent to be prosecuted in federal court for the illegal re-entry and it wasn't until he came back into DHS custody that they took a couple of months just to figure out that they had to then the DHS was permitted legally under their own regulations and statutes to deport Mr. Garcia back to Mexico. Mr. Bogdani, Mr. Spurlock says that the order of reinstatement was issued in April of 2018. That you think is a different document, not the final order of reinstatement? Well, the regulations themselves, I am not aware of any regulation that says that the notice of intent is the last step in the process and even if it were, it couldn't have been efficacious had they not completed all of the necessary steps in that reinstatement process, one of which, as the government concedes, was a reasonable hearing inquiry which, as the government also concedes, did not finish until two years after he was arrested in 2018. All right, thank you both very much. We really appreciate the help.